THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SHIRLEY L. ZIPPRICH, Defendant-Appellant.

First District (1st Division)   No. 84—1672

Opinion filed January 6, 1986.—Rehearing denied March 26, 1986.

Robert A. Egan, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Richard A. Stevens, and Maureen O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINLAN delivered the opinion of the court:

After a jury trial, defendant Shirley Zipprich was found guilty of delivery of a controlled substance and sentenced to seven years in the Illinois Department of Corrections. On appeal, defendant contends: (1) the State failed to establish a proper chain of custody, (2) the trial court erred in refusing to allow a defense witness to testify, (3) the jury should have been instructed on the offense of possession of a controlled substance, and (4) defendant's motion in arrest of judgment should have been granted.

Officer Arthur Parra testified that on August 5, 1982, he and his partner Officer Woznicki met Robert Schafer, an informant, at a gas station to arrange an undercover drug purchase. Schafer phoned defendant from a pay phone and Parra discussed the terms of the sale with defendant. Parra and defendant agreed that Parra would buy eight ounces of cocaine for $16,500. Parra, Woznicki and Schafer drove to the corner of Lawrence and Western and parked. Later a gray Thunderbird pulled up. Schafer testified defendant and another man were in the car. Parra and Schafer went to the Thunderbird and Schafer introduced Parra to defendant and her companion Jack Van Middlesworth. Parra stated he still wanted to buy the cocaine and defendant suggested they drive to a parking lot. The officers followed defendant and Van Middlesworth to a Burger King parking lot at Foster and Artesian avenues. Parra spoke with defendant there and defendant said the sale would take place at a nearby motel. Schafer, Parra and Woznicki drove to the Motor Lodge Motel at Sheridan Road and Foster Avenue and defendant and Van Middlesworth rented a room. Van Middlesworth entered the room while defendant waited outside. Shortly thereafter, Van Middlesworth motioned to defendant who opened the trunk of her car and removed a brown purse. Defendant, Parra, and Schafer went into the motel room. Defendant opened the

purse, removed a brown bag and gave the bag to Parra. Inside the bag, Parra saw two plastic bags containing a white substance. Parra set the bag on the dresser and went to his car to get money. When he returned to the room, he activated a silent alarm and other officers entered the room. Parra took the brown bag from the dresser and gave it to Detective Corcoran. He and Corcoran took the bag to police headquarters where it was inventoried, placed in a narcotics envelope, sealed, and taken by them to the crime laboratory. The bag was placed in a safe in the laboratory.

Officer Woznicki testified he also spoke to defendant on the telephone on the evening in question about buying cocaine from her. Later, he, Officer Parra and Schafer met defendant at the motel where defendant and Van Middlesworth rented a room. Middlesworth entered the room first. After a short time, he motioned for defendant to come in. Defendant opened the trunk of the car, removed a purse, and went into the hotel room with Schafer and Parra. Parra came out to the car to get money which Woznicki was carrying. Other officers and Woznicki entered the room to make the arrests after Parra activated a silent alarm.

Detective John Corcoran testified that as he entered the motel room, he observed a brown paper bag on top of a dresser. Parra handed the bag to Corcoran and Corcoran saw two plastic bags containing white powder inside the brown bag. He kept the bag in his pocket until he arrived at police headquarters, where he inventoried the bag and placed it in an evidence envelope. He sealed the envelope, initialed the seal and placed scotch tape over the initialed seal. He took the envelope to the crime lab, where it was logged in and placed in a safe. Corcoran identified the envelope and his initials on the seal.

Dorothy Wader, the chief chemist employed by the Chicago police department crime lab, testified to the procedures used when analyzing evidence. She stated that the individual packets inside an evidence envelope are marked with the signature of the analyst (apparently after the analysis), the lab case number and the weight of the substance. The evidence is then replaced in the original narcotics envelope in which it was received. The envelope is taped closed. The entire evidence envelope is placed in a plastic bag which is heat sealed. On the front of the plastic bag are the case number, the date of the analysis and the analyst's signature. She stated that she gave the evidence bag in question here to Charlene Sawallich, a lab analyst. If there had been any tear or opening in the envelope when Sawallich had received it, she would have noted it on a sheet attached to the envelope and no such sheet was attached in this case.

Gerald Pazin, a forensic chemist with the police department crime lab, testified that when he received the evidence in the case at bar, it was in a heat sealed bag. Charlene Sawallich's initials were on the outside of the envelope. He opened the narcotics envelope inside the bag and checked the contents against the inventory sheet. The evidence bag contained two plastic bags filled with white powder. He determined that the substance weighed 218.8 grams and, after performing several tests, determined that the substance was cocaine. He wrote the date, case number and his initials on the plastic bags. After he conducted the tests, he placed the evidence envelope in the plastic bag it was in when he received it and then placed that bag into another plastic bag which he sealed. On the outside of that envelope, he wrote his name, district and the test results. The bag was returned to the vault.

Defendant called no witnesses. The jury returned a verdict of guilty of delivery of a controlled substance. After trial, defendant filed a motion in arrest of judgment in which it was alleged that the trial court did not have jurisdiction because the information charging the crime had been dismissed prior to the trial. The trial court denied the motion.

■ On appeal the defendant, as stated previously, makes several arguments. First, defendant contends the trial court erred in admitting into evidence the two bags of cocaine and the results of tests performed on the cocaine because the State failed to establish a proper chain of custody. Specifically, defendant argues that discrepancies between the weight of the cocaine as determined by Ms. Sawallich and as determined by Pazin coupled with the failure of Sawallich to testify raises the presumption that the evidence was altered. Although it was never brought out during the trial, Pazin had determined that the cocaine weighed three grams less than what Sawallich had determined the weight to be.

The State has the burden of demonstrating a reasonable probability that the evidence presented at trial is that which was seized from defendant. (*People v. Ryan* (1984), 129 Ill. App. 3d 915, 473 N.E.2d 461.) But, the State is not required to negate the possibility of tampering, it need only show that the evidence has not changed substantially. (*People v. Ziehm* (1983), 120 Ill. App. 3d 777, 458 N.E.2d 588.) In this case, the evidence indicates that the chain of custody was continuous. Officer Parra and Detective Corcoran testified that the evidence was placed in an envelope, sealed and placed in the safe. The chief of the crime lab testified to the department procedures and stated that she assigned the analysis to Sawallich. Pazin, the second analyst, testified that when he obtained the evidence, the envelope was intact and Sa-

wallich's initials were on the bag. Furthermore, although the discrepancy in weight raises a possibility of tampering, we find under the circumstances of this case that it does not raise a presumption of tampering which, if uncontradicted, would bar the admission of the evidence. In fact, in *People v. Ziehm* (1983), 120 Ill. App. 3d 777, 458 N.E.2d 588, the court held that even the presence there of an additional plastic bag in the evidence envelope coupled with the presence of a greater amount of cocaine than was allegedly placed in the bag by defendant did not affect the admissibility of the evidence, but it only affected the weight to be given the evidence by the trier of fact. Therefore, here we find no error in the admission of the evidence or the results of tests performed on it.

■ Defendant next contends the trial court abused its discretion in refusing to allow a Dr. Sellers to testify on her behalf and that the denial of this testimony deprived her of a fair trial. We find no abuse of discretion in the trial court's action inasmuch as the record shows a clear lack of diligence by defendant.

On October 25, 1982, the State filed its motion for discovery. The defendant did not file her supplemental list of witnesses naming Dr. Sellers until June 19, 1984, the day trial began. The defendant's lack of diligence here is further emphasized by the fact that Dr. Sellers allegedly treated defendant in a drug rehabilitation program in 1977, and thus should have been known to defendant prior to trial. Furthermore, the materiality and relevancy of the evidence is questionable. Defendant offered Dr. Sellers' testimony to prove a defense of habitual influence of narcotics, but Dr. Sellers did not examine defendant until almost two years after the offense was committed. The fact that the examination took place long after the offense makes the evidence remote and therefore irrelevant and inadmissible. (*People v. Decker* (1984), 126 Ill. App. 3d 428, 467 N.E.2d 366.) For all these reasons, we find that the trial court did not err in excluding the testimony of Dr. Sellers.

■ Third, defendant contends the jury should have been instructed on the lesser included offense of possession of a controlled substance. Where the evidence is sufficient for a conviction on the greater offense, it is not reversible error to instruct only on that offense. (*People v. Teague* (1982), 108 Ill. App. 3d 891, 439 N.E.2d 1066.) In fact, in *People v. Dunn* (1977), 49 Ill. App. 3d 1002, 365 N.E.2d 164, the court held that an instruction on possession of a controlled substance was not proper where the evidence presented by the State concerned delivery of a controlled substance and the defendant neither rebutted the evidence of delivery nor showed that he was merely in

possession of the substance.

■ In this case, the State presented evidence that defendant arranged the sale with Officer Parra, removed the cocaine from the car trunk, and handed the cocaine to Parra in the motel room. The State clearly intended to show that defendant was responsible for the sale and delivery of the cocaine and was not merely guilty of the included offense of possession. Defendant presented no evidence rebutting the State's evidence of delivery. Under these facts, an instruction on the lesser included offense would actually have been improper because it would have allowed the jury to reach a compromised verdict. (See *People v. Knieling* (1982), 111 Ill. App. 3d 102, 443 N.E.2d 207.) Therefore, for the aforementioned reasons, we find the trial court did not err in refusing an instruction on the offense of possession of a controlled substance.

■ Finally, defendant contends her motion in arrest of judgment should have been granted. She maintains, as stated previously, that the trial court lacked jurisdiction because there was not a formal charge pending at the time of trial. The information charging defendant with delivery of a controlled substance, she argues, was dismissed on March 3, 1983, and neither a new indictment nor information was filed against her. Defendant, therefore, concludes that the trial court did not have jurisdiction over her.

The record here indicates that the case was dismissed as a discovery sanction for the State's failure to disclose the name of the informant. Furthermore, the record also shows that the order dismissing the case was vacated by agreement of the parties, and we will assume that the record is correct unless there is evidence to the contrary. The record is unimpeachable evidence of trial court proceedings (*People v. O'Shea* (1975), 26 Ill. App. 3d 826, 326 N.E.2d 230), and this court will not make assumptions based on evidence not in the record (*People v. Butler* (1976), 41 Ill. App. 3d 750, 354 N.E.2d 568). No evidence has been submitted to establish that the record here is incorrect. Thus, we find that the information charging the offense remained before the court and that the court had jurisdiction over the instant matter. Accordingly, defendant's motion in arrest of judgment was properly denied.

For these reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.